POPE, Plaintiff-Appellee, v. THE GERHAD CORPORATION, Defendant-Appellant.

Ohio Appeals, Eighth District, Cuyahoga County

No. 20574.  Decided March 24, 1947.

Miller, Davis & Folk, Cleveland, for plaintiff-appellee
Hubert B. Fuller, Cleveland, for defendant-appellant.

## OPINION

By SKEEL, J.

This appeal comes to this court on questions of law from a judgment of the common pleas court.  The plaintiff appellee's action was for a real estate commission, it being his claim that he was employed to find a purchaser for property owned by the defendant on Cedar Avenue in the City of Cleveland, and in accordance with such employment found a purchaser who was ready, willing and able to purchase said property upon the terms of defendant's offer to sell.

The evidence of both parties is not in great conflict and tends to support the following facts:

The defendant company had let it be known generally that it desired to sell its property known as No. 6211-15 Cedar Avenue.  For the purpose of explaining and making definite the terms upon which they would sell, they had set forth the

principal conditions of their offer in a written statement headed "Summary re Building" which provided as follows:

"Property known as 6211-15 Cedar Avenue, land approximately 106' x 160' and building approximately 100' x 160' with automatic sprinkler system and including the cranes.

Part known as 6215 Cedar Avenue, approximately 30' x 100' under lease at $100.00 a month, ending February 28, 1946, and lessee to maintain in good repair.

Remainder, known as 6211 Cedar Avenue, under lease at $400.00 a month, ending March 31, 1947, and lessee to maintain in good repair, and also to maintain the entire exterior. Therefore entire maintenance by lessees.

The latter lease containing a provision that whenever the owner of the property shall receive a valid and enforceable offer of purchase of the property, if Lessor shall serve Lessee with written notice of said offer, and Lessee shall not deliver to Lessor, within five days from the day on which said notice was served, an identical offer by Lessee, then at any time subsequent to the expiration of said five days, Lessor may terminate the lease, by written notice to Lessee, stating the date of termination and delivered to Lessee not less than thirty days prior to the date so set. Taxes for 1943 were $532.25. Price $32,500.00 cash or $35,000.00 one-half cash and the other half first mortgage payable ten percent per year, plus interest at five percent."

A number of real estate brokers had been working to sell the property when the plaintiff learned that the defendant had put the property on the market. The plaintiff had been instrumental previously in selling this property to the defendant and also in sub-leasing a portion of it, and for that reason seemed to feel that he was entitled to the exclusive right to re-sell the property. He called on Mr. Freeman, president of the defendant corporation, and requested that he be given such exclusive right to sell the property. Mr. Freeman, after showing the plaintiff a copy of the proposed terms upon which the defendant would be willing to sell, refused to give the plaintiff the exclusive right he requested and thereupon the plaintiff left stating that under such circumstances he would not be interested in working on the deal. This conversation between the plaintiff and Mr. Freeman took place in February or March of 1945.

The plaintiff next contacted Mr. Freeman on April 17, 1945, and inquired whether the property was still for sale and upon being told it was he inquired further as to whether or not, if

under the lease of The Ohio Aircraft Fixture Company, such company should exercise its right to take the property by meeting the offer of a prospective purchaser secured by the plaintiff, would the defendant pay plaintiff the commission? The defendant answered this question in the affirmative.

Mr. Freeman left town on a business trip on April 17th and did not return until April 28th. While he was gone, the plaintiff interested Mr. Joseph D. Balint, proprietor of The Variety Cabinet Company in the property. He tried to contact Mr. Freeman to tell him of Mr. Balint's interest but did not succeed in doing so until Saturday morning April 28th. Mr. Freeman had just gotten back to his office when the plaintiff called him on the telephone and told him he had procured a purchaser for the property for $32,500.00. Mr. Freeman told the plaintiff that during his absence another offer had been received which he would have to investigate before he could talk to the plaintiff's prospect and asked him to call later.

On April 30th Mr. Freeman on his way to his office, which is located in the Hanna Building, stopped at the property on Cedar Avenue to tell Mr. Warnsman of the Aircraft Company of the two offers he had received for the property one for $30,-000.00 where the prospective purchaser would not require the Aircraft Company to move out, and the other, the one submitted by the plaintiff for $32,500.00. When he got to his office he wrote a letter to Mr. Warnsman setting forth the substance of their conversation. The letter was written as provided by the Aircraft Company's lease and reads as follows:

"April 30, 1945.

Ohio Aircraft Fixture Company
6211 Cedar Avenue
Cleveland 3 Ohio.

**Attention: Mr. Warnsman**

Gentlemen:

Confirming our conversation this morning, I have been away for the past ten days, and on my return I have two offers for the building:

One at our price $32,500.00 for occupancy and therefore involving exercise of the provisions in regard to termination of your lease; and—

The other for investment, and therefore not involving termination of your lease, but at only $30,000.00.

Therefore, the question is as you put it, whether you would care to make up the difference, and accordingly we are delay-

ing for your decision until noon, Thursday.

Very truly yours
QUINCRAFT CORPORATION
A. H. Freeman

HFF:r"

The plaintiff on April 30, 1945, again contacted Mr. Freeman about his prospective purchaser and Freeman again requested plaintiff to delay presenting his prospective purchaser for a few days. The parties finally met in Mr. Freeman's office in the afternoon of May 2nd about 3:30. In the morning of that day the plaintiff called Mr. Freeman to make the afternoon appointment. In this conversation he informed Mr. freeman for the first time that his purchaser could not finance a cash deal and that the defendant would have to take back a second mortgage for $4500.00. Mr. Freeman told the plaintiff that he "doubted very much that he should be interested in a second mortgage" and gave his reasons.

The plaintiff requested Mr. Freeman to write up the offer on that basis which he, Freeman, promised to do but told the plaintiff he did not think the directors would agree to such terms.

When the plaintiff brought Mr. Balint and his attorney Mr. Livingstone, and his business associate to Mr. Freeman's office in the afternoon, the proposed offer as requested and suggested by the plaintiff had been prepared. Mr. Balint looked it over. He testified that he had no recollection of any changes being made in it after he got there, but the plaintiff testified that two pages were changed and Mr. Freeman testified that Mr. Balint refused to sign the offer unless the provision making the sale subject to the lease of the Aircraft Company was eliminated. The first page was therefore re-written and the word "leases" was changed to "lease" on the second page. When these changes were made Mr. Balint signed the offer to buy which included the necessity of defendant taking back a second mortgage and eliminating the lease of the Aircraft Company, and made out a check for $1000.00 payable to the defendant. The signed offer was delivered to Mr. Freeman and the check was given to the plaintiff. Mr. Freeman then stated that he was sure that the offer in the form it was signed would not be acceptable to the directors but the plaintiff asked him to submit it to them, which he agreed to do. The plaintiff did not attempt to deny or rebut this evidence of the defendant.

There is no evidence as to any further meetings or negotiations between the parties after May 2, 1945, and the property was sold to the party making the $30,000.00 offer on May 7th.

The testimony of the plaintiff, given its most favorable interpretation, fails to disclose that his proposed purchaser over offered to pay $32,500.00 cash for the property. When he first talked to Freeman about Balint on April 28, 1945, he said he had a "purchaser at the price he named." On cross-examination this is brought out where the plaintiff testified:

"I told him $32,500.00. There was nothing about cash or anything."

But if it could be said that this evidence supports plaintiff's claim that he presented one who was ready, willing and able to buy, upon the terms of the defendant's offer to sell, his undisputed subsequent conduct in presenting the written offer of May 2nd would have the effect of withdrawing such previous offer.

Freeman testified that on the morning of May 2nd the plaintiff called and said his proposed purchaser could not pay cash but would have to give back a second mortgage for $4500.-00. He also testified that the plaintiff asked him to draw up the offer of purchase on that basis for Balint to sign, and at that time Mr. Freeman told the plaintiff that such a proposition would not be acceptable. The truth of this testimony is nowhere challenged by rebuttal or otherwise and in part at least is completely substantiated by the fact that all witnesses agree that on the afternoon of May 2nd Freeman had prepared Balint's proposal which included the giving back of a $4500.-00 mortgage. But there is absolutely no evidence in the record that at any time or at any place the defendant was willing to sell on any other terms than was contained in the written "Summary Re Building," above set forth in full or that plaintiff's proposed purchaser offered to buy upon such terms.

It is too elementary to require citation of authorities that a real estate broker is not entitled to a commission in attempting to find a purchaser of the property of one who employed him for that purpose until he produces some one who is ready, willing and able to buy upon the terms upon which the owner has offered the property for sale. There is no evidence in the record which even tends to establish that the plaintiff produced a buyer ready, willing and able to buy the defendant's pro-

perty upon the terms which the defendant was willing to sell. The judgment of the common pleas court is therefore reversed and final judgment is entered for the defendant.

HURD PJ, MORGAN J, concur.